[L.A. No. 31171. Oct. 23, 1980.]

In re ROBERT WILLIAM BATTIN on Reproval.

COUNSEL

Roger S. Hanson for Petitioner.

Herbert M. Rosenthal and Scott J. Drexel for Respondent.

OPINION

THE COURT.—Petitioner, a practicing lawyer and former member of the Orange County Board of Supervisors, was convicted of misuse of public funds (Pen. Code, § 424, subd. 2). Following our receipt of notice of the conviction we referred the matter to the State Bar for report and recommendation. We must now decide whether his offense or the manner in which he committed it warrants discipline.

The facts related to his conviction are set forth at length in the Court of Appeal opinion written by Justice McDaniel, with Kaufman, Acting P. J., and Morris, J., concurring. (*People* v. *Battin* (1978) 77 Cal.App.3d 635, 643-646 [143 Cal.Rptr. 731].) The introductory paragraphs read as follows:

"The defendant was charged by indictment with theft (Pen. Code, §§ 484-487), misuse of public funds (Pen. Code, § 424, subd. 2), and presentation of fraudulent claims to the county (Pen. Code, § 72). Trial was by jury. The jury returned verdicts of guilty on the misuse of public funds count, not guilty on the fraudulent claims count, and was hung on the theft count. The court later dismissed the theft count pursuant to the People's motion. Imposition of sentence was suspended, and defendant was given three years' informal probation on the condition that he serve six months in the county jail and pay a $3,500 fine plus penalty assessments. The court then suspended five of the six months of time to be served. Execution of the one month term was stayed pending this appeal.

"Before trial, defendant filed two motions to dismiss. One was pursuant to Penal Code section 995. The other motion was based on supposed constitutional infirmities of the statute involved. Both motions were denied by the trial court; petitions for writs of prohibition on both these motions were denied by this court and the California Supreme Court. Otherwise, defendant filed a motion to dismiss based on alleged discriminatory prosecution, conflict of interest, and estoppel, together with an affidavit to disqualify the trial judge. These were also denied. After trial, defendant filed a motion for a new trial; this too was denied. Defendant now comes before us seeking reversal of his conviction on many grounds." (On Apr. 13, 1978, after the Court of Appeal upheld the conviction, we denied a petition for hearing.)

Justice McDaniel explained in the Court of Appeal opinion that he had "roughly categorized defendant's grounds into six headings: (1) challenge to the application of Penal Code section 424, subdivision 2; (2) the constitutionality of Penal Code section 424, subdivision 2; (3) failures in proof and errors in jury instructions; (4) various procedural grounds; (5) claims of discriminatory prosecution; and (6) conflict of interest." (77 Cal.App.3d at p. 647.)

Each of those headings introduces an appropriate and well-reasoned response to petitioner's detailed contentions. There is no need here to restate or summarize the court's 26-page discussion. (*Id.*, at pp. 647-672.)

The bar has summarized as follows its responses to our referral for report and recommendation: "[A] hearing panel of the State Bar Disciplinary Board conducted a hearing on April 15, 1977. While the

hearing panel unanimously found that petitioner's conduct involved moral turpitude or other misconduct warranting discipline (two members finding that petitioner's conduct involved moral turpitude and one member finding that petitioner's conduct did not involve moral turpitude but did constitute conduct warranting discipline), the hearing panel was unable to agree upon a recommendation as to the degree of discipline to be imposed.[1] [¶] An advisory review conference was held on December 12, 1978, . . . the advisory review panel issued its non-binding report and recommendation (see rule 22.50, Rules Proc. of State Bar), recommending that petitioner be granted a hearing de novo and that a new hearing panel be appointed to conduct such hearing . . . . [¶] In rendering its final Decision [Apr. 2, 1979], the hearing panel unanimously determined not to follow the advisory review panel's recommendation, finding that the advisory review panel had not had the same opportunity as the hearing panel to review the voluminous record in this matter and that justice would not be served by appointing a new hearing panel." (Brief filed here by State Bar on Jan. 25, 1980, pp. 2 and 3.)

The discussion of discipline in the hearing panel's final statement reads: "Though having a unanimous view that 'some' form of discipline is warranted under the facts and circumstances surrounding Respondent's conviction herein this Hearing Panel is unable to arrive at a majority recommendation in that regard. We respectfully submit that the Supreme Court's ultimate review and decision of this voluminous and complex record does [sic] not necessarily require same and therefore submit our recommendations as follows:

"1. Referee BIGONGER would recommend Public Reproval.

"2. Referee Bridges would recommend that Respondent be suspended (actual) for six months, be required to comply with Rule 955 and

---

[1]The proposed discipline is described as follows on page 2 of the advisory review panel's report: "One referee recommended disbarment, one recommended an actual six months' suspension, and the other recommended that there be no actual suspension but that respondent be placed on probation for a six-months' period."

take the Professional Responsibility Examination before resuming actual practice.

"3. Referee Campagna would recommend Respondent be Disbarred." (*Id.*, Appen. A, pp. 11, 12.)

It is disheartening that the hearing panel members, notwithstanding their unanimous agreement that "there was, and still is, sufficient grounds [*sic*] for rendering a final decision" (*id.*, Appen. A, p. 1), concluded that this court in its review of the "voluminous and complex record" would have less difficulty than they did. We do not find it necessary now, however, to answer the juridical question as to whether the bar in fact has submitted a "recommendation" within the meaning of Business and Professions Code section 6102.[2]

### HAS PETITIONER BEEN PUNISHED?

Among the findings filed on April 2, 1979, No. 10 and No. 11 read as follows:

"10. The trial judge's original sentence...included a six-month jail sentence, which after defense arguments, was reduced by suspending five (5) months of the six (6) months imposed provided that Respondent paid the fine ($3,500.00) and penalty assessment within certain time limits.

"11. The impositon [*sic*] of thirty (30) days actual jail time was stayed by the trial judge pending Respondent's pursuing his appeal rights, but the fact itself was construed as requiring Respondent's immediate removal from his public office, and he was so removed."

---

[2]The final paragraph of the advisory review panel's recommendations reads: "It is recommended...[that a] hearing de novo be held before an entirely different hearing panel. This recommendation...is due to the feeling of the Advisory Review Panel that the positions and opinions of the original Hearing Panel may very well have become fixed to the extent that no different result could result from a hearing de novo in spite of what other different evidence might be produced. This recommendation in no way is intended to be disparaging of the original Hearing Panel but it was made clear at the conference that all members of the original Hearing Panel conscientiously adhered to their original beliefs, feelings and opinions concerning the matter with the exception of Mr. Bigonger who expressed some doubt concerning his finding of moral turpitude. Also, because of the wide disparity of recommended discipline, it would appear that the original Hearing Panel is unable to submit to the State Bar, and subsequently to the Supreme Court, any recommendation that will serve as a guide to the Supreme Court. Perhaps a new and different hearing panel might produce some degree of unanimity concerning discipline to be imposed if such hearing panel makes a finding that discipline is warranted."

We learn additionally from papers filed on behalf of petitioner that (1) he has paid the fine ($3,500) and the penalty assessment ($875); (2) he was jailed in October 1978 for 20 days (apparently with the additional 10 more days off for good behavior); (3) the probation requirements have been met; (4) since his removal from the board of supervisors the practice of law has been his full-time occupation; and (5) there is no evidence of other discipline by the bar.

## CONCLUSION

■ The punishment thus summarized, supplemented by the record here (including the Court of Appeal opinion from which we quoted above), appears to have been sufficient. The appropriate discipline now is public reproval.

We therefore order that petitioner should be, and hereby he is, reproved.

**RICHARDSON, J.**—I respectfully dissent.

In my view, an attorney who holds both his licensure to practice law and a public office as well carries two separate and independent obligations: that to his clients, the courts and his profession because he is an attorney, and that to the public at large because he is an officeholder. Although these responsibilities are parallel and indeed occasionally overlap, I think of them as unattached and disjoined. The professional obligation, fiduciary as to the client, arises from his status as a lawyer and is governed by special rules of professional conduct found in the Business and Professions Code following section 6076, West's Annotated California Codes. The public obligation, created by the assumption of his office, is owed to the public at large and is of the same general nature as that held by other public officials, lawyers or nonlawyers alike.

Mr. Battin as a citizen was convicted by a jury of a violation of Penal Code section 424, subdivision 2, the misuse of public funds. Appropriate punishment was imposed for the offense, consisting of both confinement and a fine.

In addition, Mr. Battin's conduct was independently evaluated by his professional peers, his fellow lawyers, and the majority of a hearing panel of the State Bar Disciplinary Board determined that his offenses

constituted "moral turpitude." As such these acts invoke section 6106 of the Business and Professions Code which provides: "The commission of any act involving moral turpitude,...whether the act is committed in the course of his relations as an attorney or otherwise, and whether the act is a felony or misdemeanor or not, constitutes a cause for disbarment or suspension."

Thus, in my view, the disciplinary action by the State Bar, if any, has an independent genesis and force apart from the appropriate punishment administered in the criminal proceeding. Accordingly, while petitioner's payment of fine and penalty, and his service of the jail commitment fully discharge his obligations under the state's penal laws, the matter of bar discipline remains.

Petitioner's acts of moral turpitude involved misuse of public funds. They were multiple and serious and knowing. While the State Bar panel was unable to agree on the appropriate discipline, again, a majority recommended either disbarment or a six months' suspension and passage by petitioner of the Professional Responsibility Examination. Given the nature and duration of the offenses involved, I would favor imposition of some period of actual suspension.

Clark, J., and Manuel, J., concurred.

On November 19, 1980, the opinion was modified to read as printed above.